UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                          :

NICOLE E. YOUNG,

                                          :      14cv9377

              Plaintiff,

                                          :      <u>OPINION & ORDER</u>

       -against-
                                          :

BRADLEY ROSENBERG,

                                          :

              Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

WILLIAM H. PAULEY III, United States District Judge:

        This Court has reviewed the Report and Recommendation of Magistrate Judge Debra Freeman dated July 11, 2017 (the "Report"). (ECF No. 25.) The Report recommends an award of compensatory damages in connection with Plaintiff Nicole Young's breach of contract claim against Defendant Bradley Rosenberg in the amount of $8,864.00; pre-judgment interest of $2,995.92 accrued from October 1, 2012 to June 29, 2016; and pre-judgment interest to be calculated by the Clerk of Court at a rate of 9% per annum from June 30, 2016 until the date that a final judgment in this action is entered. No objections to the Report were filed. Nevertheless, for the following reasons, this Court declines to adopt the Report.

        The Report provides a thoughtful analysis of expectation damages, the customary measure of damages in breach of contract cases. Expectation damages are "based on the injured party's expectation interest" and "intended to give [her] the benefit of [her] bargain by awarding [her] a sum of money that will, to the extent possible, put [her] in as good a position as [she] would have been in had the contract been performed." <u>Waxman v. Envipco Pick Up & Processing Servs., Inc.</u>, 2006 WL 236818, at *4 (S.D.N.Y. Jan. 17, 2006). But under certain

circumstances, "a plaintiff may be entitled to elect between damages representing the benefit of the bargain made—expectation damages—and damages representing an undoing of the bargain altogether—restitution damages." Waxman, 2006 WL 236818, at *4.

Restitution damages "are sometimes awarded in cases of total breach or repudiation, allowing the non-breaching party to claim restitution damages in order to be restored to [her] original position." Mazzei v. Money Store, 308 F.R.D. 92, 105 (S.D.N.Y. 2015). This measure of damages does not account for "the loss in the value to [plaintiff] of the other party's performance, but rather receives the value of the benefit conferred to the other party." Waxman, 2006 WL 236818, at *4 (citing Restatement (Second) of Contracts § 347(a); Bausch & Lomb, Inc. v. Bressler, 977 F.2d 720 (2d Cir. 1992)). Because a restitution award does not provide the plaintiff with what was due her under the contract, but rather seeks to restore "the reasonable value of any benefit conferred upon the defendant by the plaintiff, it is not governed by the terms of the parties' agreement." Bausch & Lomb, 977 F.2d at 730. The decision to award restitution lies within the discretion of this Court. Mazzei, 308 F.R.D. at 105.

The Report recommends awarding damages in the amount of $8,864, a sum less than the $10,324 that Young paid Rosenberg under the contract. In the ordinary breach of contract case, expectation damages arising from an agreement to purchase stock would factor in the risk that the stock's value may drop and result in a net loss to the plaintiff. That appears to have been the case here, where both Facebook's IPO stock price (valued at $38.23) and the strike price offered by Rosenberg (valued at $25.81) dropped to an average price of $22.16 by October 1, 2012, the date used to calculate damages in the Report.

But that would be an odd result in a case that smacks of fraud.[1] Taking all of Young's allegations as true, Rosenberg never intended to wire the fair market value of the securities back to Young and instead misappropriated the funds for his own benefit. (See, e.g, Complaint ("Compl."), ECF No. 2, at ¶¶ 30, 33, 52, 69; Proposed Findings of Fact and Conclusions of Law Concerning Damages ("Proposed Findings of Fact"), ECF No. 24, at ¶ 6.) Rosenberg's actions, in essence, amounted to a "total breach" of the contract.

While the Report analyzes damages based on Young's request for "the Fair Market Value (FMV) of the 400 Facebook shares" in connection with her breach of contract claim (Proposed Findings of Fact at ¶ 16), the analysis should have accounted for restitution as an acceptable form of damages. Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc., 341 F. Supp. 2d 258, 271 (S.D.N.Y. 2004) ("Any of expectation, reliance or restitution damages may be appropriate, bearing in mind that Plaintiff must prove any claimed damages were caused by Defendant's breach to a reasonable degree of certainty.") (emphasis original).

"Under New York law, restitution damages are available as an equitable remedy for repudiation or total breach of contract." Summit Props. Intern., LLC v. Ladies Professional Golf Ass'n, 2010 WL 4983179, at *4 (S.D.N.Y. Dec. 6, 2010); Tech. Express, Inc. v. FTF Bus. Sys. Corp., 2000 WL 1877020, at *6 (S.D.N.Y. Dec. 26, 2000). Restitution appears to be the appropriate measure of relief where, as here, the doctrine is "premised upon the equitable principle that a person who has been unjustly enriched at the expense of another is required to make restitution to the other." Bausch & Lomb, 977 F.2d at 729. Once the defendant has been deemed liable for total breach, the plaintiff may recover "the reasonable value of services

---

[1] Indeed, the Report separately finds Rosenberg liable under both Young's common law fraud and Section 10(b) securities fraud claims. (See Report and Recommendation at 15 n.6, 21.)

rendered, goods delivered, or property conveyed less the reasonable value of any counter-performance received by [her]." Bausch & Lomb, 977 F.2d at 730; Atlantis Info. Tech., GmbH v. CA, Inc., 2011 WL 4543252, at *9 (E.D.N.Y. Sept. 28, 2011). Moreover, because "restitution looks to the reasonable value of any benefit conferred upon the defendant by the plaintiff," it is "available even if the plaintiff would have lost money on the contract if it had been fully performed." Bausch & Lomb, 977 F.2d at 730. That appears to be the case here, where Young would have received Facebook shares at a value less than the amount for which they were purchased if Rosenberg performed under the contract.

The fundamental purpose of restitution is "to prevent unjust enrichment." Restatement (Second) of Contracts § 344. On the face of the Complaint, it is unclear what Rosenberg did with the money Young sent him. While the money was intended to purchase Facebook stock, the Complaint does not allege whether Rosenberg purchased the stock and kept it for himself, or whether he simply used the funds for another purpose. It is also unclear whether Rosenberg held onto the stock only to watch it grow in value over the years to Young's detriment. (See, e.g., Report and Recommendation at 21 n.11; Compl. at ¶¶ 33, 69.) What is clear is that Rosenberg benefited at Young's expense. (Compl. at ¶ 39; Proposed Findings of Fact at ¶ 5.) Equally obvious is that Young received nothing in return for wiring the money, and now stands to lose money based on the damages recommended by the Report. In this Court's view, that would amount to an inequitable result.

Accordingly, Young is entitled to restitution in the amount of $10,324 plus pre-judgment interest. Pre-judgment interest, re-calculated based on the revised damages figure, accrued at a daily rate of $2.55. It is unclear when the breach occurred, but the Magistrate Judge's use of October 1, 2012 is reasonable, and this Court adopts it for purposes of calculating

pre-judgment interest. Thus, from October 1, 2012 until June 29, 2016, the date of Young's inquest submission, the total pre-judgment interest is $3,488.40. Therefore, Young is entitled to damages in the amount of $13,812.40 in addition to the pre-judgment interest accruing between June 30, 2016 and the date on which final judgment is entered.

Moreover, while the Report declined to grant post-judgment interest on the basis that "final judgment [had] not yet been entered," Young is entitled to it. (Report and Recommendation at 17 n.9.) Post-judgment interest should be calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System for the calendar week preceding the date of judgment" until Rosenberg tenders payment. 28 U.S.C. § 1961.

## CONCLUSION

Accordingly, this Court declines to accept the Magistrate Judge's Report and Recommendation. For the foregoing reasons, the Clerk of Court is directed to enter judgment in the amount of $13,812.40, plus pre-judgment interest accrued at nine percent per annum between June 30, 2016 and the date that final judgment is entered.

Post-judgment interest is also awarded, with the total amount to be calculated from the date final judgment is entered until the date Rosenberg satisfies the judgment. The Clerk of Court is directed to calculate post-judgment "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System for the calendar week preceding the date of judgment." 28 U.S.C. § 1961.

The Clerk of Court is directed to mark this case as closed.

Dated: August 1, 2017
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.